# IN THE SUPREME COURT OF TEXAS

No. 18-0905

IN THE INTEREST OF A.M., A CHILD

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SEVENTH DISTRICT OF TEXAS

JUSTICE BLACKLOCK, joined by JUSTICE DEVINE, concurring in the denial of the petition for review.

Termination of parental rights has rightly been called the civil death penalty. *In re K.M.L.*, 443 S.W.3d 101, 121 (Tex. 2014) (Lehrmann, J., concurring). As a statutory matter, the State of Texas cannot sever the legal bond between parent and child unless it proves, by clear and convincing evidence, that (1) the parent has committed one of the enumerated predicate acts, and (2) termination is in the child's best interest. TEX. FAM. CODE § 161.001(b). As a constitutional matter, courts have long acknowledged "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000). "This natural parental right [is] a basic civil right of man[] and far more precious than property rights." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985) (citation and internal quotation marks omitted).

The rigorous "clear and convincing evidence" standard is one way in which Texas law protects the unique, natural bond between parent and child. The law did not create this bond. The law merely recognizes and respects a bond that already exists by virtue of our human nature. Like

the inalienable rights of which the Declaration of Independence speaks, the bond between parent and child was not given by law. We were endowed with it by our Creator. *See* THE DECLARATION OF INDEPENDENCE para. 2 (U.S. 1776). Our legal traditions have long acknowledged that the autonomous nuclear family, bound together by natural ties deeper and stronger than any law, is the very building block of civilization. *See, e.g.*, *Parham v. J.R.*, 442 U.S. 584, 602 (1979) ("Our jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children. . . . [O]ur constitutional system long ago rejected any notion that a child is 'the mere creature of the State' and, on the contrary, asserted that parents generally 'have the right, coupled with the high duty, to recognize and prepare [their children] for additional obligations.'" (alteration in original) (citation omitted)). Our legal traditions also recognize that the State may legitimately interfere with family autonomy to protect children from genuine abuse and neglect by parents who are unfit to discharge the "high duty" of "broad parental authority over minor children." *Id.* But the responsibility to protect children from abusive parents does not authorize the State to oversee the internal affairs of every family. "The statist notion that governmental power should supersede parental authority in *all* cases because *some* parents abuse and neglect children is repugnant to American tradition." *Id.* at 603 (emphasis in original).

In this parental-rights termination case, some of the evidence presented at trial and cited by the court of appeals, when viewed in the light most favorable to the judgment as it must be on appeal, arguably supports the judgment terminating the petitioner's parental rights. For that reason, granting this petition would be unlikely to change the outcome. However, other evidence relied on by the court of appeals—concerning the petitioner's use of traditional disciplinary

2

methods with his daughter—has no relevance in a termination case, in my view. I write separately to caution against use of such evidence as grounds for judicial interference with parental rights.

Most of the petitions for review this Court receives in parental-termination cases involve parents whose severe abuse or abandonment of their children, debilitating drug addiction, or violent and criminal behavior provide the clear and convincing evidence required for imposition of the draconian remedy of termination. This case is more difficult than most. It raises close questions of evidentiary sufficiency. Some of the evidence relied upon by the court of appeals may support termination under the deferential standard of review applied to evidentiary-sufficiency questions.[1] The court of appeals recounted this evidence. *In re A.M.*, 2018 WL 3799885, at *1–4. It could have stopped there.

In addition to relying on evidence of genuine parental misconduct, however, the court of appeals also faulted the petitioner, the child's father, for using several old-fashioned punishment methods deemed inappropriate by the government and its witnesses. According to the court of appeals, the trial testimony painted a "sordid picture of maltreatment ostensibly used for punishment of A.M. in the home." *Id.* at *10. What was this evidence of sordid maltreatment? The father (1) withheld Christmas presents from his daughter as punishment for misbehavior, (2) made her swallow a little hot sauce or eat a hot pepper when she told a lie, and (3) made her do

---

[1] We are bound at this stage of the proceedings to view the evidence in the light most favorable to the judgment. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). The evidence demonstrated neglectful and abusive conduct by the child's stepmother, the petitioner's wife, who severely burned the child's hands in scalding hot water. *In re A.M.*, No. 07-18-00141-CV, 2018 WL 3799885, at *7 (Tex. App.—Amarillo Aug. 9, 2018, pet. denied) (mem. op.). And there is perhaps some basis in the record on which a factfinder could have concluded—again, we must take the evidence in the light most favorable to the judgment of termination—that the petitioner, the child's father, knew about the stepmother's mistreatment of the child and condoned or allowed it. Father has other plausible explanations for his conduct, but we are not at liberty to draw inferences in his favor on appeal. The sufficiency of the evidence is a close question, but I concur in the denial of the petition because I believe granting the petition to address that question would not change the ultimate outcome of this case.

3

physical exercises when she acted up. *Id.* at *4–5, 10. The court of appeals' opinion suggests that these punishments amounted to child abuse justifying the judicial destruction of a family. I disagree.

However far out of favor such traditional disciplinary measures may have fallen in some quarters, a parent's choice to employ them should be afforded no weight in a termination proceeding. Threatening to withhold presents as punishment is a ubiquitous part of popular Christmas culture. A little hot sauce for lies or bad words seems downright humane compared to the vigorous mouth-washing feared by generations of foul-mouthed children and administered by generations of loving mothers. And how many parents at their wits' end have made their kids run around the block or do pushups or jumping jacks? If reliance on these old-fashioned punishments—and others like them, such as spanking—can be used against parents by a government that seeks to take away their parental rights, then "the fundamental right of parents to make decisions concerning the care, custody, and control of their children" is no longer what it once was.

In fairness to the court of appeals, its opinion's reliance on the father's disciplinary techniques likely resulted from the government's emphasis on those facts in its briefing. But every fact relied on by the government to support its termination case need not be thrown for good measure into a court-of-appeals opinion affirming termination. I agree with former Justice Michael Massengale of the First Court of Appeals, who also "caution[ed] against the dangers of kitchen-sink approaches to opinion writing, particularly in the area of parental-termination appeals." *In re A.K.T.*, No. 01-18-00647-CV, 2018 WL 6423381, at *20 (Tex. App.—Houston [1st Dist.] Dec. 6, 2018, pet. denied) (mem. op.) (Massengale, J., concurring) (objecting to

4

opinion's suggestion that appellant's poverty made termination of parental rights more justifiable). Lower courts and litigants look to court-of-appeals opinions for guidance on what constitutes clear and convincing evidence supporting termination of parental rights. Appellate opinions in these important cases should distinguish between facts that support termination and facts that do not, rather than reciting every piece of evidence relied upon by the government.

* * *

"[D]eeply rooted in our Nation's history and tradition[] is the belief that the parental role implies a substantial measure of authority over one's children." *Bellotti v. Baird*, 443 U.S. 622, 638 (1979). If some judges and juries around the State now believe that punishing children the way previous generations of American children were punished amounts to "sordid maltreatment" justifying government intervention, the Legislature may wish to make its views known. The advisability or efficacy of these punishments is not the issue. The issue is whether Texas parents still have the liberty to employ them as they see fit without fearing a knock on the door from child protective services. I believe they do. But this Court is not well situated to micromanage these evidentiary questions in hundreds of parental-rights cases around the State. The opinions about proper child-rearing held by well-meaning "experts"—who often testify for the government in child-protection cases—do not always reflect the opinions held by most Texans.[2] As that

---

[2] *Compare* Tracie O. Afifi et al., *Spanking and adult mental health impairment: The case for the designation of spanking as an adverse childhood experience*, 71 CHILD ABUSE & NEGLECT 24 (2017), Benjamin Shmueli, *Who's Afraid of Banning Corporal Punishment - A Comparative View on Current and Desirable Models*, 26 PENN. ST. INT'L L. REV. 57 (2007), *and* David Orentlicher, *Spanking and Other Corporal Punishment of Children by Parents: Overvaluing Pain, Undervaluing Children*, 35 HOUS. L. REV. 147 (1998), *with* NATIONAL OPINION RESEARCH CENTER AT THE UNIVERSITY OF CHICAGO, GENERAL SOCIAL SURVEY (2018), https://gssdataexplorer.norc.org/trends/Gender%20&%20Marriage?measure=spanking (finding that 66% of respondents nationally and 77% of respondents in the South, which includes Texas, responded that they either "agree" or "strongly agree" that "it is sometimes necessary to discipline a child with a good, hard spanking"), *and* REUTERS/IPSOS, ONLINE POLL (2014),

5

divergence of opinion persists, further legislative protection for a parent's reasonable choice of disciplinary methods may be necessary to adequately preserve the family autonomy so "basic in the structure of our society." *Id.* (citation omitted).

With these reservations noted, I concur in the denial of the petition for review.


_____
James D. Blacklock
Justice


**OPINION DELIVERED:** October 18, 2019

---

http://polling.reuters.com/#!response/TM361Y14_1/type/smallest/dates/20140917-20141009 (finding that 68% of respondents nationally and 77% of respondents in the Southwest, which includes Texas, responded that they either "somewhat agree" or "strongly agree" that "non-excessive corporal punishment such as spanking should be allowed at home").